UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| RUSSELL R. DEAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-03340-SEB-MJD |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Russell R. Dean ("Dean") requests judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title

XVI of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3)(A). For

the reasons set forth below, the Magistrate Judge recommends that the District Judge **AFFIRM**

the decision of the Commissioner.

I.     Background

Dean filed an application for DIB and SSI on October 16, 2012, alleging an onset of

disability date of October 31, 2011. [Dkt. 9-5 at 202.] Dean alleges disability due to degenerative

disc disease of the neck and middle back, arthritis, and pain from a pinched nerve in his lower

back.[1] [Dkt. 9-3 at 77.] Dean's application was initially denied on December 5, 2012, and denied

again on February 4, 2013, upon reconsideration. [Dkt. 9-4 at 104–120.] Dean timely filed a

---

[1] Dean and the Commissioner recited the relevant factual and medical background in more detail in their opening briefs. [*See* Dkt. 13; Dkt. 14.]  Because these facts involved Dean's confidential and otherwise sensitive medical information, the Court will incorporate by reference the factual background in the parties' briefs but will articulate specific facts as needed below.

written request for a hearing, which was held on December 9, 2014, and again on May 19, 2015, before Administrative Law Judge Ronald T. Jordan. ("ALJ"). [*Id.* at 122–123.] The ALJ issued a decision on June 19, 2015, again denying Dean's application for DBI and SSI. [Dkt. 9-2 at 20.] On October 17, 2016, the Appeals Council denied Dean's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. [Dkt. 10-2 at 1.] Dean timely filed his Complaint with this Court on December 12, 2016, which Complaint is now before the Court. [Dkt. 1.]

## II.    **Legal Standard**

To be eligible for DIB or SSI, a claimant must have a disability pursuant to 42 U.S.C. § 423.[2] Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the Commissioner, as represented by the ALJ, employs a five-step sequential analysis: (1) if the claimant is engaged in substantial gainful activity, he is not disabled; (2) if the claimant does not have a "severe" impairment, one that significantly limits his ability to perform basic work activities, he is not disabled; (3) if the claimant's impairment or combination of impairments meets or medically equals any impairment appearing in the Listing of Impairments, 20 C.F.R. pt. 404, subpart P, App. 1, the claimant is disabled; (4) if the claimant is not found to be disabled at step three and he is able to perform his

---

[2] In general, the legal standards applied in the determination of disability are the same regardless of whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for Disability Insurance Benefits and Supplemental Security Income claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provisions as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

past relevant work, he is not disabled; and (5) if the claimant is not found to be disabled at step three and cannot perform his past relevant work but he can perform certain other available work, he is not disabled.  20 C.F.R. § 404.1520.  Before proceeding from step three to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), identifying the claimant's functional limitations and assessing the claimant's remaining capacity for work-related activities. S.S.R. 96-8p.

The ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*  This Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008) (citing *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)).  The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citing *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985); *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984)).  However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  To be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

III.    **The ALJ's Decision**

The ALJ first determined that Dean has not engaged in substantial gainful activity since October 31, 2011, the alleged onset date. [Dkt. 9-2 at 25.] At step two, the ALJ determined that Dean "has the following severe impairments: degenerative disc disease; history of left rotator cuff repair; and chronic obstructive pulmonary disease." [*Id.*] However, at step three, the ALJ found that Dean does not have an impairment or combination of impairments that meets or medically equals a listed impairment. [Dkt. 9-2 at 27.] In making this determination, the ALJ considered Listings 1.04 (Disorders of the Spine), 1.02 (Major Dysfunction of a Joint), and 3.02 (Chronic Respiratory Disorders). [Dkt. 9-2 at 28.]

The ALJ next analyzed Dean's residual functional capacity ("RFC"). He concluded that Dean had the RFC to perform a range of light work except:

> [Claimant can] lift, carry push, or pull twenty pounds occasionally and ten pounds frequently; stand and walk six hours in an eight hour day; sit six hours in an eight hour day; occasionally stoop, balance, crouch, kneel, crawl, and climb stairs or ramps; never climb ladders, scaffolds, or ropes; no work around hazards such [as] unprotected heights or unguarded moving machinery; no required ambulation on wet or uneven surfaces; only occasional overhead reaching; no use of vibratory tools; no work in temperature extremes or unusually high levels of humidity; and not subjected to concentrated levels of dust, fumes, gasses, strong odors, or poor ventilation.

[Dkt. 9-2 at 29.]  In finding these limitations, the ALJ considered Dean's "symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." [Dkt. 9-2 at 28.] At step four, the ALJ concluded that Dean is able to perform past relevant work as a cashier and a security guard. [Dkt. 9-2 at 34.] Consequently, the ALJ stopped at step four and concluded that Dean was not disabled. [*Id.*]

## IV.     Discussion

Dean asserts the ALJ committed multiple errors that require remand. Specifically, Dean argues the ALJ erred in preparing an RFC that is not supported by substantial evidence. [Dkt. 13 at 12-18.] Additionally, Dean argues the ALJ erred in his credibility determination. [Dkt. 13 at 18-21.]

### A.  Residual Functional Capacity

Dean argues numerous legal problems exist within the RFC, but all of those issues are founded upon Dean's contention that the ALJ cherry-picked certain evidence and focused on "benign findings" in his RFC analysis. [Dkt. 13 at 14.] Dean alleges the ALJ failed to properly consider the entirety of Dr. Wang's opinion and wrongfully substituted his own lay opinion for the professional judgment of Dr. Francis. In addition, Dean alleges the ALJ failed to properly characterize the evidence pertaining to Dean's neck and back impairments. Furthermore, Dean alleges the ALJ failed to fully and fairly develop the record by not recontacting Dr. Wang for clarification regarding vague portions of Dr. Wang's opinion. The Court addresses each argument relating to the ALJ's discussion of Dean's RFC in turn below.

### 1.  *Dr. Wang*

On November 19, 2012, Dean underwent a consultative examination conducted by Dr. Shuyan Wang. [Dkt. 13 at 10.] Dr. Wang determined that Dean had the following symptoms:

> [B]ilateral bow-legged deformity in the legs, difficulty getting up from sitting, difficulty getting up from the supine position, heavy breathing with posture/motor/gait testing, tenderness in the left side lower abdomen, limited extension, lateral bend, and rotation of the cervical spine, pain with cervical spine motion, pain in the lumbar spine and paravertebral spasm, limited forward flexion and extension of the lumbar spine, pain with lumbar spine motion, limited straight leg raising due to low back and knee pain, tenders in the right shoulder, mild tenderness and some crepitus in the left shoulder, bilateral shoulder pain with bilateral shoulder motion, low back and hip pain with bilateral hip motion, limited

5

internal rotation of the bilateral hips, limited right hip external rotation, and knee pain with squatting.

[*Id.*] Dr. Wang opined Dean could do light-duty work, including light-duty lifting and carrying.

[*Id.*] He also opined that Dean could not walk long distances, could not frequently lift or reach overhead, should avoid bending, had difficulty squatting, could not climb ladders or scaffolding, could not work at unprotected heights, and should avoid extreme cold and damp environments.

[Dkt. 14 at 4.]

An ALJ must assign a medical opinion appropriate weight after considering relevant factors, including whether the opinion was supported by relevant evidence, whether the opinion was consistent with the record as a whole, and whether the medical source is familiar with other information in the claimant's case record. 20 C.F.R. § 404.1527(c). An ALJ only needs to "minimally articulate" his reasons for the weight he assigned to a medical opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("If the ALJ discounts the physician's opinion after considering these factors, we must allow that decision to stand so long as the ALJ "minimally articulated" his reasons – a very deferential standard that we have, in fact, deemed 'lax.'").

Here, the ALJ met his burden by minimally articulating his reasons for the weight he assigned to Dr. Wang's opinion. The ALJ indicated he gave "great weight" to the opinion of Dr. Wang because "it is from a medical expert that actually examined [Dean] and is well supported by their clinical findings." [Dkt. 9-2 at 33.] However, the ALJ made some adjustments to reflect the completed evidentiary record because Dr. Wang was "unable to review the additional evidence of record from other sources or consider [Dean's] work history." [*Id.*]

Dean's argument that the ALJ impermissibly cherry-picked Dr. Wang's examination and seemingly focused on "benign findings" is without merit. Dean relies on *Bates v. Colvin* to establish that an ALJ cannot rely only on the evidence that supports his opinion. [Dkt. 13 at 14

(citing 736 F.3d 1093, 1099 (7th Cir. 2013)).] However, this case is far afield from *Bates*, as the ALJ in that case specifically omitted portions of a medical opinion that suggested the existence of mental illness. *Id.* ("For example, the ALJ's opinion states that the treatment notes from an August 12, 2009 appointment show 'relevant thought process.' The rest of the notes from that session, however, show that Bates was tearful, anxious and isolated, suffering from insomnia, depressed, and had a constricted affect.").

In the present case, the ALJ specifically noted that Dr. Wang recorded mildly limited ranges of motion in Dean's cervical spine, lumbar spine, and hips, and bow-legged deformity even though Dean could walk with a normal gait and could walk on heels, tandem walk, and perform a partial squat. [Dkt. 9-2 at 31.] The ALJ also noted Dr. Wang recorded that Dean reported pain when lying down and had difficulty getting up from sitting or lying. [*Id.*] In addition, the ALJ acknowledged that Dr. Wang recorded paravertebral muscle spasms, bilateral shoulder tenderness, and a positive straight leg-raising test as well as mildly limited muscle strength in his right arm. [*Id.*] Furthermore, the ALJ noted Dr. Wang observed that Dean had full grip strength, normal gross and fine finger skills, and full muscle strength in his arms and legs. [*Id.*] Thus, it is obvious the ALJ evaluated Dr. Wang's opinion as a whole and did not cherry-pick only evidence that support his opinion.  As the ALJ articulated his reasons for not crediting portions of Dr. Wang's opinion, this ground cannot serve as a basis for remand.

**2.  *Dr. Francis***

In May 2015, a supplemental hearing was held to hear testimony from medical expert Anthony Francis, M.D. [Dkt. 13 at 5.] Dr. Francis noted Dean did not have a condition that reached listing level severity and indicated an RFC of medium work with some reduction in the use of the left shoulder or maybe both shoulders. [*Id*.] Furthermore, Dr. Francis explained this

would also include frequent climbing of stairs and ramps, occasional climbing of ropes, ladders, and scaffolds, frequent stooping, bending, crawling, kneeling, squatting, and balancing, frequent use of lower extremities, no unprotected heights, avoidance of exposure to dust, noxious fumes, excessive cold, excessive vibration, and exposure to hazardous or dangerous machinery with moving parts. [*Id*. at 6.] He noted "[u]pper extremity use would probably be limited to no overhead use of either shoulder." [Dkt. 9-2 at 47.] Dr. Francis further opined the RFC might be reduced down to light work "where everything would stay the same with the exception of the weight limitations would be 20 and 10, lifting 20 pounds occasionally, 10 pounds frequently." [*Id*.] The ALJ assigned "great weight" to the opinion of Dr. Francis while including "occasional overhead reaching" in the RFC finding. [Dkt. 9-2 at 32.]

Both parties agree that the ALJ erred by failing to explain why he did not adopt Dr. Francis' opined limitation on overhead lifting and reaching. [Dkt. 13 at 14; Dkt. 14 at 6.] However, they disagree on whether the ALJ's error is harmless. [*See Id*.] An administrative error may be harmless. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[W]e will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."). The harmless error standard is not an exercise in rationalizing the ALJ's decision or substituting the Court's hypothetical explanations for the ALJ's inadequate articulation. *Id.* Rather, it is a question of "can [the Court] say with great confidence what the ALJ would do on remand." *Id.* When a review of the records shows that no reasonable ALJ would reach a contrary decision on remand, remand is not necessary or appropriate. *Id.*

Here, in reaching his conclusion that only limits Dean to "occasional overhead reaching," the ALJ noted Dean testified that he had a twenty-pound overhead lifting restriction. [Dkt. 9-2 at 29.] The ALJ also noted that in April 2012, several months after surgery on his left shoulder,

Dean reported he was "doing well with minimal pain" in his shoulder. [*Id.*] Thus, the ALJ reasoned that the impairment seemed to be appropriately treated with surgical intervention. [*Id.*] Additionally, the ALJ considered evidence about Dean's cervical spine complaints, noting that x-rays done in 2013 did not show any significant increase in his abnormalities. [*Id.* at 30.] The ALJ also noted that Dean's treating providers sometimes recorded mild to moderate limitations in his arms, but at other times recorded full range of motion. [*Id.*] The ALJ noted that although consultative examiner Dr. Wang observed mildly limited strength in Dean's right arm and shoulder tenderness, he measured full range of motion in Dean's shoulders. [*Id.* at 31.]

In addition, the ALJ considered other opinions which contradict Dr. Francis' opined limitation on overhead lifting and reaching. Specifically, the ALJ gave great weight to the opinions of state agency physicians who opined that Dean could perform occasional overhead reaching. [*Id.* at 32.] Similarly, as discussed above, the ALJ assigned great weight to Dr. Wang's opinion, which stated that Dean could not reach and lift overhead frequently, and by implication, could do so occasionally. [*Id.* at 33.] Furthermore, the ALJ noted that an occupational therapy evaluation gave Dean a fifty-pound weight limitation and a three-month lifting restriction after his left shoulder surgery. [*Id.*] However, the post-surgery restriction was only temporary. [*Id.*] Thus, the ALJ stated that he found Dean's shoulder impairments can be appropriately accommodated by limiting Dean to occasional overhead reaching. [*Id.* at 31.]

A review of the records convinces the Court that no reasonable ALJ would reach a contrary decision on remand regarding Dean's overhead lifting and reaching limitation. Although the ALJ erred by failing to explain why he did not adopted Dr. Francis' opined limitation on overhead lifting and reaching, the remainder of the ALJ's opinion sufficiently supported and explained his decision. As a result, the Court concludes the ALJ's error is harmless.

### 3. *Neck and Back Impairments*

Dean argues that the ALJ's analysis of Dean's neck and back impairments constitutes impermissible cherry-picking. [Dkt. 13 at 15-16.] In making this argument, Dean focuses on the evidence of his longstanding history of chronic pain. He explains that the ALJ failed to appreciate the extent of his cervical and lumbar degenerative disc disease, as reflected in the opinions of medical professionals, and thereby, the ALJ cherry-picked only evidence that support his conclusion.

The Commissioner responds to Dean's arguments by explaining that the ALJ adequately considered all the relevant evidence, and he simply viewed the evidence differently than Dean. [Dkt. 14 at 8 (citing *Butera v. Apfel*, 173 F.3d 1049, 1055 ("That Plaintiff would have drawn different conclusions from the evidence does not support remand. Weighing the evidence is the ALJ's job, not the Plaintiff's")).]

As the Court has noted, the ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Elder*, 529 F.3d at 415. The "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron*, 19 F.3d at 333. The Court reviews the ALJ's decision deferentially but cannot uphold the decision if the ALJ fails to articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning" and "build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

In this case, the ALJ discussed Dean's spine complaints, noting that a magnetic resonance imaging study of Dean's lumbar spine in 2010 showed degenerative change with

stenosis and left L3 and L5 nerve root displacement/contact. [Dkt. 9-2 at 29-30.] The ALJ noted

a cervical spine magnetic resonance imaging study in 2010 showed multiple levels and

degenerative changes with mild cord deformity and canal narrowing. [*Id.*] The ALJ further

considered prior electromyography and nerve conduction studies of Dean's extremities which

were normal and showed no radiculopathy. [*Id.*] Moreover, the ALJ discussed the 2012 imaging

of Dean's lumbar spine which showed no changes, and thus, failed to indicate any significant

neurological compromise. [*Id.*] The ALJ further considered and discussed the 2013 treating

source notes which indicated Dean "does not have a 'pinched nerve' in his back." [*Id.*] Finally,

the ALJ discussed x-rays of Dean's cervical spine in 2013 which failed to indicate any

significant increase in his abnormalities. [*Id.*] All of the evidence that was considered included

both favorable and unfavorable evidence regarding Dean's neck and back impairments. As a

result, the Court concludes that the ALJ provided "some glimpse" into his reasoning and did not

cherry-pick only the evidence that support his conclusion.

### 4. *Recontacting Dr. Wang*

Dean further argues the ALJ did not fully develop the record because the ALJ failed to

recontact Dr. Wang for clarification regarding vague portions of Dr. Wang's opinion. [Dkt. 13 at

17.] Specifically, Dean argues Dr. Wang's opinions that Dean "cannot not [sic] walk a long

distance," "may need to avoid bending over," and "has difficulty to do squatting," are unclear as

to the actual functional limitations they represent. [*Id.*] Dean also argues that the ALJ substituted

his own lay opinion in attempting to interpret Dr. Wang's clinical observations to fill the

evidentiary gaps in the record created by the vagueness in the medical opinion. [*Id.*]

The Commissioner responded to Dean's argument by stating that Dr. Wang's opinions

were not incomprehensively vague and there is no indication that the ALJ found the opinions

vague. [Dkt. 14 at 8.] Moreover, the Commissioner argues that Dean failed to express any concern at the hearing about Dr. Wang's reports or opinions, and thus, Dean cannot now assert that the ALJ erred by not seeking "clarification" from Dr. Wang. [*Id.*]

"It is an ALJ's responsibility to recognize the need for further medical evaluation of a claimant's conditions before making RFC and disability determination." *Chase v. Astrue*, 458 Fed. App'x 553, 557 (7th Cir. 2012). While "an ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable," the ALJ "need[s] not solicit additional information if [he] simply finds a physician's opinion unsupported." *Bailey v. Colvin*, No. 12 C 9659, 2015 WL 7251939, at *8 (N.D. Ill. Nov. 17, 2015).

Here, a review of the record shows that Dr. Wang's reports are not vague and the ALJ appears to have sufficiently understood them. Dr. Wang opined that Dean could not walk long distances, should avoid bending, and had difficulty squatting. [Dkt. 9-10 at 642.] After considering Dr. Wang's opinions and the remainder of the evidence, the ALJ limited Dean to light work with occasional stooping or crouching. [Dkt. 9-2 at 28.] Dr. Wang further opined that Dean needed "some restriction for climbing" and then opined that "[Dean] would not be able to…climb up ladders, scaffolding, or work at unprotected heights." [Dkt. 9-10 at 642.] Thus, it is clear that Dr. Wang opined Dean could not climb ladders or scaffolding and the ALJ adopted that limitation. [*See* Dkt. 9-2 at 28.]

Moreover, as the Commissioner correctly pointed out, if Dean were concerned about Dr. Wang's report, he was required to voice that concern to the ALJ. [Dkt. 14 at 8-9 (citing *Donahue v. Barnhart*, 279 F.3d 441, 447 (7th Cir. 2002) ("Raising a discrepancy only after the hearing…is too late.")).] Having failed to do so, Dean must accept the ALJ's exercise of discretion in

determining whether additional evidence was required. *See Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994) ("[H]ow much evidence to gather is a subject on which we generally respect the Secretary's reasoned judgment."). Because the ALJ provided an accurate and logical bridge between the evidence and his conclusion, the Court concludes that the ALJ did not abuse his discretion in considering Dr. Wang's report without re-contacting Dr. Wang.

### B. Credibility Determination

Dean finally argues that the ALJ's credibility determination is not supported by substantial evidence. [Dkt. 13 at 18.] Specifically, Dean argues that the ALJ failed to properly assess Dean's subjective reports of his symptoms and used Dean's good work record against him. [*Id.*] The ALJ's credibility determinations are given deference because the ALJ is "in a special position to hear, see, and assess witnesses." *Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). The Court will only overturn the ALJ's credibility determination "if it is patently wrong, which means that the decision lacks any explanation or support." *Id.* at 816. In drawing the conclusion, the ALJ must "explain [his] decision in such a way that allows [the Court] to determine whether [he] reached [his] decision in a rational manner, logically based on [his] specific findings and the evidence in the record." *Id.* (citing *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011)).

In this case, the ALJ discussed different magnetic resonance imaging studies of Dean's lumbar and cervical spine over the years as well as the treating source notes in 2013, which indicated that Dean "does not have a 'pinched nerve' in his back." [Dkt. 9-2 at 30.] The ALJ also considered the 2013 x-rays of Dean's cervical spine which failed to show any significant increases in Dean's abnormalities. Based on that evidence, the ALJ concluded that the "evidence fails to demonstrate significant spinal abnormalities that would fully support [Dean's] current

allegations of [an] *increase in symptoms*." [*Id.* (emphasis added).] The ALJ further discussed Dean's medications, their side effects, as well as the Department of Veterans Affairs' determination that Dean was sixty percent (60%) disabled and his reasons for finding the rating "does not support a finding of disability in this matter." [Dkt. 9-2 at 32–33.]

Importantly, Dean concedes that his "symptoms may have waxed and waned leading to seemingly benign treatment notes on select occasions." [Dkt. 13 at 19.] While Dean asserts that the overall record supports his allegations of disabling pain, the Court reminds Dean that the Court may not reweigh the evidence or substitute its judgment for that of the ALJ but may only determine whether substantial evidence supports the ALJ's conclusion. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).

Moreover, Dean's argument that the ALJ improperly used Dean's work history against his credibility is unpersuasive. "A 'claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability.'" *Shumaker v. Colvin*, 632 Fed. App'x 861, 866–67 (7th Cir. Dec. 10, 2015) (citing *Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)). However, "[w]ork history is just one factor among many, and it is not dispositive." *Id.* at 867. The ALJ reasoned that because there was no change in Dean's medical conditions, there was no objective explanation for why Dean was able to work previously but now claimed disability. [Dkt. 9-2 at 30–31.] In making this determination, the ALJ looked at several factors including Dean's daily activities, hobbies, treatment history, and medical opinions. [Dkt. 9-2 at 28–33.]

Furthermore, Dean's argument that the ALJ used Dean's minimal daily activities to establish that he was capable of engaging in substantial physical activity is without merit. To support his position, Dean cited to *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). In that

14

case, the Court held that the ALJ stated in a conclusory manner that Clifford's testimony regarding the limitations placed on her daily activities was unsupported by the medical evidence in the record. *Id.* The Court found that the ALJ failed to explain why the objective medical evidence did not support Clifford's complaints of disabling pain and that the ALJ merely listed Clifford's daily activities as substantial evidence that she did not suffer disabling pain. *Id.*

In the cases Dean relies on, the ALJs' assertions that the claimants were capable of substantial physical activities were not supported by the medical evidence as a whole. However, that is not the case here. This case is distinct from the cases Dean string cites because here the ALJ properly analyzed Dean's daily activities and hobbies and adequately explained his reasons as to why they seem to indicate a level of functioning that is consistent with the modest residual functional capacity set forth in the RFC.

When determining that Dean's "activities of daily living seem to indicate a level of functioning that is consistent with the modest residual functional capacity set forth [in the RFC]," the ALJ stated that in addition to being able to care for his own personal needs, Dean was able to spend the day "doing laundry, shopping, cleaning, doing dishes,…cooking complete multi-course meals." [Dkt. 9-2 at 29.] Dean was also able to mow, get firewood when needed, took care of pets, and performed household repairs weekly. [*Id.*] In addition, Dean reported hobbies of watching movies, playing games, hunting, fishing, camping, hiking, horseback riding, building things out of wood and metal, and welding. [*Id.*] Thus, along with other medical evidence in the record, the ALJ concluded that Dean's daily activities and hobbies contradict Dean's allegations that he could only sit for fifteen minutes at a time and the increased intensity of his back pains.

## V.    Conclusion

The standard of review of the Commissioner's denial of benefits is deferential. The Court reviews the record as a whole, but does not re-weigh the evidence or substitute its judgment for the ALJ's. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  The Court must uphold a decision where, as here, it is supported by substantial evidence in the record. As the Court cannot find a legal basis to overturn the ALJ's determination that Dean does not qualify for disability benefits, the undersigned recommends the Commissioner's decision be **AFFIRMED**.

## Notice Regarding Exceptions

Within fourteen days of being served with a copy of this recommendation, either party may serve and file specific written objections thereto. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2). A district judge shall make a *de novo* determination of those portions of the recommendation to which objections are made. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(3). Failure to file an objection might result in forfeiture of the right to *de novo* determination by a district judge and to review by the court of appeals of any portion of the recommendation to which an objection was not filed. *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011); *United States v. Pineda-Buenaventura*, 622 F.3d 761, 777 (7th Cir. 2010); *Schur v. L. A. Weight Loss Centers, Inc.*, 577 F.3d 752, 761 n.7 (7th Cir. 2009); *Kruger v. Apfel*, 214 F.3d 784, 787 (7th Cir. 2000); *Davis v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

Dated:  9 NOV 2017

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

16

Distribution:

Howard D. Olinsky
OLINSKY LAW GROUP
holinsky@windisability.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov